Filed 11/6/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074397 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F01772) |
| v. | |
| ALIM HUSSAIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Emily Vasquez, Judge.  Reversed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, and Sally Espinoza, Deputy Attorney General, for Plaintiff and Respondent.

1

On April 29, 2013, a jury found defendant guilty of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)),[1] arising from an improper lien sale.  The jury acquitted defendant of other charges arising from that sale, as well as the charge of operating a chop shop.  The trial court placed defendant on five years of formal probation, including 120 days in the county jail as a condition thereof.

On appeal, defendant contends the trial court erred in failing to instruct sua sponte on claim of right as a defense (CALCRIM No. 1863), and that counsel was ineffective in failing to request the instruction.  Defendant also contends there is insufficient evidence of his criminal intent.

The People concede the evidence supported a claim of right instruction.  We agree with the parties on that point.  The People also concede error by the trial court in failing to sua sponte instruct the jury on claim of right.  We reject that concession, as we explain *post*.  We do find, however, that trial counsel was ineffective in failing to request that pattern instruction CALCRIM No. 1863 be given and that this failure resulted in prejudice to defendant.  Accordingly, although we find sufficient evidence to support defendant's conviction, we reverse the judgment.

## FACTS

Defendant was born in the Fiji Islands, where he went to school only to the sixth grade.  He came to the United States in 2000, obtained a green card, and opened a car repair shop, A-TEK Automotive, in 2006.  He has learned to speak English, but cannot read or write it.[2]  He has his customers write out the invoices; some claim they do not need one.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] At trial defendant began his testimony by trying to answer questions without translation.  As it became apparent he had difficulty understanding some questions, the trial court required the interpreter to translate every question.

Schools Financial Credit Union (Schools) had financed a 1988 Toyota Land Cruiser for Froyland Lorezco. Department of Motor Vehicle (DMV) records show the financier as the legal owner of the vehicle and the person with the loan as the registered owner. In February 2010, Lorezco fell behind in the payments; the vehicle was assigned for repossession in May. In July 2011, Schools learned it was no longer listed as the legal owner of the vehicle. The vehicle had been registered to a Mr. Nasrudin. Schools' collection manager reported this change of ownership to the DMV.

Eric Cook, a DMV investigator, was notified of the lien complaint. The transfer documents for the Land Cruiser showed a lien sale through A-TEK Automotive. A lien sale is based on a possessory lien for services and permits a licensed repair facility to sell a car to recoup repair costs and other expenses. The first step is for the lien holder to obtain information from the DMV about all interested parties, such as the legal owner and registered owner. The lien holder then notifies those parties of the lien sale by certified mail with an accompanying certificate of mailing. After the sale, when the lien holder seeks to change the registration of the vehicle, he submits various documents to the DMV, including postal receipts to prove proper notice was given. The documents that defendant submitted to the DMV for this lien sale were missing the postal receipt showing notice had been given to the credit union. Nonetheless, the DMV transferred title to the Land Cruiser to defendant. This transfer was a mistake; the DMV clerk should have returned the documents and noted what was missing. Defendant subsequently sold the Land Cruiser to Ahmad Sha Nasrudin.

On December 1, 2011, Cook went to see defendant about the lien complaint on the Land Cruiser. Defendant gave evasive answers to Cook's questions; he claimed he could not remember the name of the customer who brought in the Land Cruiser or the name of the person to whom he later sold it. Defendant said a customer brought the Land Cruiser in to get the transmission repaired and wanted defendant to remove the transmission. The customer would get it repaired and have defendant reinstall it. The customer never

returned so defendant installed a new transmission in the vehicle. Defendant had no paperwork for the repairs.

Daniel Cawley accompanied Cook to A-TEK Automotive. While Cook was questioning defendant, Cawley looked around the repair area. He saw a dark blue Audi; its body parts had been removed, and the right front frame rail and front passenger compartment had been cut off. The car looked like it was being chopped up and Cawley suspected a chop shop. When Cawley asked defendant about the car, defendant said it had been in an accident and the owner asked to have the component parts removed and the chassis cut. Again, defendant had no paperwork. The car parts did not appear damaged.

*The Trial*

At trial, Gurpreet Singh, the owner of the blue Audi, testified he left the car at defendant's shop. Later, he reported the car stolen in Colorado and filed an insurance claim, receiving $4,299. He claimed defendant told him to make this false report. Later, Singh saw the car being dismantled. He went back to the Colorado police and told "the whole story." He had not repaid the insurance company.

A retired DMV investigator testified he believed A-TEK was operating as a chop shop.

An investigator from the Bureau of Automotive Repairs inspected the Land Cruiser. It had its original transmission, the one installed by Toyota. Based on the amount of dirt on the transmission, he did not believe the transmission had been taken out in the last year before inspection. He later testified he was 100 percent confident that the transmission had not been removed in the nearly two years between the transfer and the inspection.

Nasrudin and his son Samardin testified about the purchase of the Land Cruiser from defendant. Samardin had purchased the car for his father and told varying stories of

4

how much he paid. He told investigators he paid $4,000 to $5,000, perhaps with a trade-in. He later produced a receipt for $6,000.

Defendant testified he gave Lorezco an estimate of $2,500 to rebuild the transmission in the Land Cruiser. Lorezco asked defendant to take out the transmission and he would have someone else rebuild it. Defendant removed the transmission, but Lorezco later brought it back and defendant reinstalled it. Defendant did some other work on the Land Cruiser; the total bill was $590, of which $450 was labor. Defendant was unable to reach Lorezco to pick up the vehicle because his phone was disconnected.

After the vehicle had been left at his shop a long time, defendant called Lisa Hodges, who helped him with paperwork. She told him to file a lien. Hodges had been an office manager for a towing company and was very familiar with lien sales. She knew notice of the sale had to be sent to the DMV, the registered owner, and the legal owner. She filled out the lien paperwork for defendant. She obtained information from the DMV about Schools' legal ownership. In sending Schools notice she mistakenly transposed numbers in both the post office box and the zip code of Schools' address. The post office returned the notice undelivered, with a yellow label affixed to the front of the envelope. Defendant received the returned letter, but did not know what the yellow label meant, or realize the letter pertained to the lien sale. He just filed it without opening it. After he was criminally charged, he looked for the letter, found it, and gave it to his lawyer.

Hodges told defendant he could sell the Land Cruiser 31 days after the lien was filed. Defendant checked with her as to when the 31 days had lapsed, and she told him he could sell the car. Defendant sold the Land Cruiser to Samardin for $750 and a trade-in. Defendant claimed Samardin removed a receipt from defendant's receipt book at the time of the sale.

Defendant testified Singh asked him to remove parts from the Audi and cut it up. Defendant had his suspicions, but did what Singh asked.

5

Defendant explained he was on pain medication and "sleepy" when the police questioned him about the Land Cruiser and the Audi. The officer used a "hard tone" and tried to confuse and scare him.

*Charges and Verdicts*

Defendant was charged with owning and operating a chop shop (Veh. Code, § 10801), theft by false pretenses with Ahmad Nasrudin as the victim (§ 532, subd. (a)), grand theft of an automobile with Schools as the victim (§ 487, subd. (d)(1)), and perjury (§ 118, subd. (a)).

During jury deliberations, the jury asked for Hodges's testimony to be reread. The jury then asked for a clarification about the law, inquiring if the specific intent instruction (CALCRIM No. 251) applied to "every element of every count," specifically, "Elements 1, 2, 3, and four on Page 35." Page 35 contained only the instruction on grand theft auto, CALCRIM No. 1800, titled "Theft by Larceny (Pen. Code, § 487(d)(1))." The court responded that the specific intent required for grand theft was "to deprive the owner of it permanently." The jury also asked for a definition of "mental state" as appearing in CALCRIM No. 251, and the court simply told the jury to read the content of the instruction, not its title.

The jury found defendant guilty of theft by larceny, but not guilty of the other charges and a lesser offense.

**DISCUSSION**

I

*Duty to Instruct Sua Sponte on Claim of Right*

Defendant contends the trial court erred in failing to instruct sua sponte on the defense of claim of right. He asserts the court should have given CALCRIM No. 1863.[3]

_____

[3] CALCRIM No. 1863 provides: "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/ [or] robbery) [¶]

6

Defendant claims he was prejudiced because the jury struggled with the specific intent requirement for grand theft and the jury acquitted him on the other charges relating to the Land Cruiser.

The People concede there was sufficient evidence to support the instruction, agreeing there was evidence to support defendant's argument he acted in good faith in appropriating the Land Cruiser. The People also concede error in the trial court's failure to instruct sua sponte on claim of right. They contend, however, the error was harmless because defendant's credibility was weakened by other parts of his testimony and his counsel argued claim of right to the jury. We reject the second concession and disagree with the harmless error analysis.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) The trial judge has a duty to instruct as to defenses " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) " 'However, when a

The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money and (he/she) openly took it. [¶] In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] [The claim-of-right defense does not apply to offset or pay claims against the property owner of an undetermined or disputed amount.] [¶] . . . [¶] If you have a reasonable doubt about whether the defendant had the intent required for (theft/ [or] robbery), you must find (him/her) not guilty . . . ."

7

defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a "pinpoint" instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such "pinpoint" instructions are not required to be given *sua sponte* and must be given only upon request. [Citations.]' " (*People v. Saille* (1991) 54 Cal.3d 1103, 1117.)

In *People v. Anderson* (2011) 51 Cal.4th 989 at page 998, our Supreme Court held trial courts do not have a duty to instruct sua sponte on the defense of accident, provided the jury is properly instructed on the mental state element of the charged crime. The *Anderson* court explained that the defense of accident serves only to negate the mental state element of the offense charged, and the trial court's only obligation to instruct on accident is to provide an appropriate pinpoint instruction upon request. (*Id.* at pp. 997–998.) In *People v. Lawson* (2013) 215 Cal.App.4th 108 at page 117, the appellate court held "the rationale of *Anderson* is applied with equal force to the defense of mistake of fact, or any other defense that operates only to negate the mental state element of the crime."

"The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery." (*People v. Tufunga* (1999) 21 Cal.4th 935, 938.) "Stated simply, a claim of right to take disputed property negates the criminal intent necessary for theft. [Citation.]" (*Barnett v. State Farm General Ins. Co*. (2011) 200 Cal.App.4th 536, 544.)

Since the claim of right defense, like accident or mistake of fact, serves only to negate the mental state required for grand theft, under *Anderson* the trial court had no

8

duty to instruct sua sponte on it. Absent a request from either counsel, the trial court did not err in failing to instruct with CALCRIM No. 1863.**4**

II

*Ineffective Assistance of Counsel*

Defendant next contends he received ineffective assistance of counsel because counsel failed to request CALCRIM No. 1863. He contends counsel could not have had a tactical reason for failing to request the instruction because counsel relied on claim of right in his closing argument. Counsel argued defendant believed the lien sale had been conducted properly and Hodges told him he could sell the vehicle to the Nasrudins. Defendant contends he was prejudiced by this omission.

" 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.]" (*People v. Goldman* (2014) 225 Cal.App.4th 950, 957; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-694 [80 L.Ed.2d 674, 693-698] (*Strickland*).)

---

**4** We note that neither party cited *Anderson* on appeal or otherwise recognized that the trial court had no obligation to instruct sua sponte on claim of right. We recognize that *People v. Russell* (2006) 144 Cal.App.4th 1415, 1429, held a trial court must instruct sua sponte on claim of right if there is substantial evidence to support the defense and it is not inconsistent with defendant's theory of the case. We agree, however, with *People v. Lawson*, *supra*, 215 Cal.App.4th at p. 118, that after *Anderson*, *Russell* is no longer good law on this point.

"We deem it appropriate to emphasize that the duty of counsel to a criminal defendant includes careful preparation of and request for all instructions which in his judgment are necessary to explain all of the legal theories upon which his defense rests." (*People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7, overruled on other grounds in *People v. Breverman, supra*, 19 Cal.4th at pp. 164-178.) Here, the jury was instructed using the CALCRIM pattern instructions. CALCRIM No. 1863, entitled "Defense to Theft or Robbery: Claim of Right (Pen. Code, § 511)," was first published in January 2006 and revised in October 2010. Counsel should have been aware of this pattern instruction and the need to *request* the instruction if the claim of right defense was even arguably supported by the evidence, rather than waiting for the trial court to give it sua sponte or ignoring it all together. Claim of right was the *core* of defendant's defense to the grand theft charge. Counsel argued to the jury that defendant lacked the requisite intent because he thought that he had the right to sell the Land Cruiser. Defendant thought the lien sale was proper, and Hodges had represented to him that he had the right to sell the vehicle. Counsel argued that "there is not guilty intent as to the -- as to stealing the property of the credit union." Further, had counsel been aware of *Anderson*, a case that was decided almost two years before trial, he would have been alerted to the need to request the instruction. (See *Nelson v. Estelle* (5th Cir. 1981) 642 F.2d 903, 908 ["a failure of counsel to be aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment"].)

The record does not reveal why counsel failed to request the instruction on claim of right. In such instances, the claim of ineffective assistance of counsel will be rejected unless counsel was asked for an explanation and failed to provide one or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) This case falls in the latter category; there can be no satisfactory reason not to request an instruction to support the core of the defense. The question, then, is whether the failure to request CALCRIM No. 1863 was prejudicial.

The People contend there was no prejudice. They point to several areas of defendant's testimony that compromised defendant's credibility. On the lien notice, defendant claimed he paid $165 for towing, but he admitted he was reimbursed the towing charge. There was a discrepancy as to the purchase price of the Land Cruiser. Defendant claimed he installed the transmission but the People's expert refuted that claim. Defendant failed to tell Hodges about the returned letter although she testified it was his obligation to do so. Presumably, the People are arguing the jury would have rejected the claim of right defense even if instructed on it.

We are not persuaded. As we have discussed, the claim of right defense--that defendant had a good faith belief that the lien sale had been conducted properly--was the heart of his defense to the grand theft charge. The jury struggled with the element of intent on this charge, asking specifically how specific intent related to the elements of grand theft. The jury acquitted him on every charge except this one, as to which it was not properly instructed.

Certainly, there were problem areas in defendant's testimony (as there were with other witnesses) and the jury could have rejected some or even all of it. The acquittals on other charges, however, indicate the jury, who saw defendant testify and thus could assess his credibility, did not reject defendant's testimony entirely. The jury acquitted defendant of theft by false pretenses, apparently finding that he did not intend to deceive the Nasrudins as to his right to sell the Land Cruiser.[5] Further, the jury acquitted him of

---

[5] The People argue repeatedly that theft by false pretenses is different than larceny by trick or device. This argument is puzzling because larceny by trick or device was not charged or offered as a theory of theft in this case. The People fail to explain how the intent requirement differs between theft by false pretenses and *grand theft*--which was defendant's crime of conviction. We will not argue their point for them. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) " 'The crime of grand theft is complete when a man takes property not his own with the intent to take it, and a defendant may be convicted of grand theft upon proof of facts establishing (a)

11

operating a chop shop even though a dismantled and chopped up car was found in his shop, he knew about it because he told an inquiring worker the ongoing dismantling was fine, an expert testified defendant was operating a chop shop, and defendant called Singh right after the investigators came. The jury appeared to accept defendant's testimony that he was Singh's dupe. Thus, it is reasonably probable the jury may have accepted defendant's claim of right defense if instructed on it.

CALCRIM No. 1863 would have informed the jury that defendant lacked the necessary intent for theft if he had a good faith belief he had a right to the property, and that if there was a reasonable doubt as to his intent, the jury must acquit. There was evidence of defendant's limited education, his problems with English and his inability to read or write the language. There was direct evidence neither that he understood the procedure for a lien sale, nor that he knew or intended that the credit union did not receive notice. Even the DMV, charged with knowing the requirements of a lien sale, failed to notice or act on the deficiencies in the lien sale documents and transferred title to the Land Cruiser to defendant. While defendant failed to tell anyone about, or even open, the returned letter, he kept it rather than discarding it. There was no evidence Hodges told him about the possibility of a returned letter or his obligation to notify her if he received one.

Here, there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694 [80 L.Ed.2d at pp. 697-698].) Counsel's failure to request an instruction on the key point of his client's defense, which would have supported his argument, deprived defendant of his constitutional right to effective assistance of counsel and requires reversal of his conviction.

---

embezzlement, (b) larceny or (c) obtaining property under false pretenses . . . ' " (*People v. Hunter* (1957) 147 Cal.App.2d 472, 475.)

III

*Substantial Evidence of Specific Intent*

Finally, defendant contends there was insufficient evidence he had the specific intent to deprive the credit union of the Land Cruiser.[6]  Rather than point to a specific area of insufficiency, defendant relies on the acquittal on the charge of theft by false pretenses.  He contends that acquittal shows the jury found the People failed to prove defendant knowingly and intentionally deceived the Nasrudins as to his right to sell the Land Cruiser.  He argues, "Because there was no intent to defraud the buyers, there similarly could be no intent to permanently deprive the credit union of the car."

Defendant relies too heavily on his acquittal.  Inconsistent verdicts alone do not establish insufficient evidence.  "An acquittal of one or more counts shall not be deemed an acquittal of any other count."  (§ 954; see *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657.)

"The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence."  (*People v. Palmer* (2001) 24 Cal.4th 856, 860.)  "[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.  [Citations.]"  (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.)  "The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding 'through mistake, compromise, or lenity . . . .'  [Citation.]"  (*Ibid.*)

---

[6]  Although we reverse for ineffective assistance of counsel, we address this contention to determine if defendant may be retried.  "[A]n appellate reversal for insufficient evidence is the functional equivalent of an acquittal at trial," and bars retrial of the charges. (*People v. McCann* (2006) 141 Cal.App.4th 347, 354.)

To establish defendant had the specific intent to deprive the credit union of its ownership of the car, the People had to prove defendant knew the lien sale was invalid and he knew the credit union had not given up its claim on the vehicle. The evidence on this point was conflicting and dependent on determinations as to credibility. As we have noted, *ante*, inconsistencies in defendant's testimony could have caused the jury to disregard it. Evidence of intent to commit a theft "is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances." (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.)

Here, defendant had known Hodges for several years and she often completed paperwork for him. A reasonable jury could have concluded the transposing of numbers on both the post office box and the zip code of the credit union's address--the key components of the address and apparently the only mistakes made--was simply too great a coincidence to have been accidental. There was evidence from which the jury could have inferred defendant was a part of this scheme, even if not the instigator. He gave vague answers when the DMV investigators first questioned him, claiming not to remember who left the Land Cruiser at his shop, as well as to whom he sold it. Many of the figures defendant gave Hodges for the paperwork were suspect, suggesting the lien sale was not in good faith. The People's expert testified the transmission had not been removed, casting doubt on defendant's claim he performed *any* repairs on the Land Cruiser. Further, defendant changed his story as to whether he installed a new transmission or reinstalled the old one. Defendant claimed expenses for towing, although he had been reimbursed. There was conflicting evidence of the sales price for the Land Cruiser. The lien claim form stated a sales price of $750, with no indication of a trade-in. The credit union later sold the vehicle for $7,575. Hodges testified she found defendant's figure for storage costs "ridiculous."

There was sufficient evidence to support a conviction for grand theft of an automobile.

## DISPOSITION

The judgment is reversed. The People may elect to retry defendant within the time specified in section 1382, subdivision (a)(2). In light of the reversal due to ineffective assistance of counsel, the clerk of this court is directed to give the required notice to the State Bar and to trial counsel. (Bus. & Prof. Code, § 6086.7; Cal. Rules of Court, rule 10.1017.)

       DUARTE       , J.

We concur:

       ROBIE       , Acting P. J.

       MURRAY       , J.