Filed 9/29/15  P. v. Rivera CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Alpine)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EMILIANO TINO RIVERA,<br><br>Defendant and Appellant. | C075542<br><br>(Super. Ct. No. SF124384A) |

A jury found defendant Emiliano Tino Rivera guilty of one count of evading a police officer while driving a car (Veh. Code, § 2800.2) and three counts of assault with a deadly weapon on a police officer (Pen. Code, § 245, subd. (c)); unless otherwise stated, statutory references that follow are to the Penal Code).  The jury was unable to reach a verdict on three other charges of assaulting a police officer with a deadly weapon (§ 245, subd. (c)) and those charges were dismissed.  The trial court found defendant previously had served a prison term and sentenced defendant to an aggregate term of seven years in state prison.

1

On appeal, defendant contends trial counsel was ineffective in failing to request an instruction on "accident" (CALCRIM No. 3404) and that he was prejudiced by counsel's failure. We affirm the judgment.

FACTS AND PROCEEDINGS

On May 25, 2013, Lodi Police Officer Jose Nuno and his partner Officer Nick Rafiq were on patrol in Lodi. Around 5:30 p.m. Nuno attempted to stop a white Chevy truck with an expired registration. When Nuno turned on the patrol car's emergency lights, the driver, later identified as defendant, stopped the truck at the curb. But as Nuno began to get out of the patrol car, defendant drove off. Nuno went back to the patrol car, turned on the lights and siren, and chased the truck while calling for police back-up.

During the pursuit, defendant drove in excess of posted speed limits, failed to stop at nine posted stop signs, failed to stop at several traffic lights, and accelerated to 80 to 90 miles per hour. Defendant finally came to a stop near a park, where a large family gathering was taking place. Nuno stopped his patrol car behind defendant. Nuno and Rafiq then saw the truck's reverse lights come on, the rear tires accelerate, and the truck move backward toward the patrol car.

The truck struck the patrol car and the rear of the truck became stuck on the hood of the patrol car, pushing the patrol car backward, leaving skid marks. Defendant then put the truck in "drive," pulling the patrol car forward before the truck separated from the patrol car and sped away. The patrol car was damaged but neither Nuno nor Rafiq were injured.

As defendant sped away, he nearly hit two more patrol cars. One patrol car veered off the road to avoid being hit, the other veered up onto the curb causing the car's tire to blow out. Three more patrol cars arrived and had to swerve onto or toward the sidewalk to avoid colliding with defendant's truck.

2

Defendant was arrested on June 11, 2013 and, as noted above, the People charged him with six counts of assault with a deadly weapon (§ 245, subd. (c)), and evading a police officer while driving a car (Veh. Code, § 2800.2, subd. (a)). The People further alleged defendant previously served a term in prison.

At trial, defendant testified that he had ingested methamphetamine shortly before Nuno saw him driving the truck. Defendant "panicked" when Nuno turned on the patrol car's lights because he believed there was a warrant out for his arrest for failing to report to his parole officer. According to defendant, he drove around the neighborhood intending to stop at the park where his family was having a party. He had borrowed the truck he was driving and he wanted his family to return the truck to its owner.

When defendant got to the park, he testified it was his intention to leave the truck and run from the police on foot. Defendant saw the patrol car stop behind him, however, and he decided to drive away. He intended to put the truck in drive and speed away but, according to defendant's version of events, he accidentally put the truck in reverse. Thus, when he stepped on the gas, the truck went backward and hit the patrol car, getting stuck on the car's hood.

When defendant disentangled the truck from the patrol car, he drove away. Defendant testified that as he again attempted to evade the officers, he saw only two other patrol cars and both were pulled over on the side of the road. Defendant denied the truck was ever closer than 10 to 12 feet from the oncoming patrol cars.

In closing argument, defendant's counsel conceded that defendant was guilty of evading and focused his argument on the assault charges. On the assault charges, counsel said, "[defendant] is not asking you for sympathy, he is--what he is asking for is for you to convict him of the appropriate charges, what he did do, not what he didn't do. The case is simply overcharged. It's overcharged. . . . You are going to have . . . to determine the appropriate charge based on each and every allegation."

3

Counsel then highlighted what he argued was "inconsistent" evidence to support the People's case. He argued the officers' testimony at trial was inconsistent with their reports and their preliminary hearing testimony; he argued the photographs of the crime scene were inconsistent with the officers' testimony; and he argued the officers' were inconsistent with each other in their testimony. Counsel said the officers' testimony regarding the length of the skid marks was inconsistent and not supported by the photographs. He argued the officers were inconsistent with how far each patrol car was from defendant, including Nuno and Rafiq's patrol car. Further, he argued the officers were inconsistent with where the collision with Nuno and Rafiq's patrol car took place and where each patrol car was in relation to the others during the chase.

Counsel also told the jury that at least one officer, Landis, was "embellishing" his recollection of events. In sum, defense counsel argued the officers were incredible: "Every single officer contradicted the other officers in material, relevant, important ways. It doesn't matter why, but it matters when you evaluate credibility."

Counsel went on to discuss the elements of assault with a deadly weapon and argued there was insufficient evidence that defendant's conduct was likely to result in great bodily injury: ". . . we know nobody got hurt. We know there's property damage, but that's not an assault. We know nobody got hurt. So if you're telling me that something is likely to happen and then it in fact, does not happen, that means it's not likely to me. It should mean the same to you.

"So you have the option, basically, of looking to the lesser included offense, which does not require proof of great bodily injury, okay? It just requires proof of an assault. You know, if an assault occurred, you have to--you can decide that, but you have to look--the most important part of this 245(c), the greater offense, is the great bodily injury factor. It doesn't include property damage . . . . [¶] . . . [¶]

"We should deal with what happened here, okay? We are not here to speculate on remote possibilities, we are here to deal with what happened. The only instance in which

4

force was applied was the one, and there's no injury, so ask yourself if that's likely, ask yourself if it's likely if it's within twenty feet, ask yourself if it's likely within twenty yards. The inches thing, I don't think that's credible, I don't think that's credible. Even if it was, you know, there was no force, and even if there was force, we've seen the force and we know what it did. It caused property damage and it didn't hurt anybody. So if you feel these officers were assaulted, you have the choice to look at the lesser included offenses, okay?"

Counsel finished his argument by focusing the jury's attention on the instructions and the People's burden of proof: "At the end of this, you're going to look at the instructions, I hope you're going to look at them closely, at each offense, compare them to the facts, look at each lesser included offense, and ask yourself, do I have an abiding conviction as to each element, do I have an abiding conviction that this was likely to cause great bodily injury, more than slight or moderate injury, when it didn't, in fact, cause injury."

As set forth above, the jury found defendant guilty of assault with a deadly weapon on Nuno, Rafiq, and Landis, and evading a police officer while driving a vehicle.

### DISCUSSION

Defendant contends he received ineffective assistance of counsel at trial because counsel failed to request an instruction on "accident," CALCRIM No. 3404. He contends there was substantial evidence to support such an instruction stating, "no satisfactory explanation exists for . . . counsel's failure to request an accident instruction" and therefore, he was prejudiced by the omission.

To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692 [80 L.Ed.2d 674]; *People v.*

5

*Ledesma* (1987) 43 Cal.3d 171, 216-217.)  " 'Surmounting *Strickland's* high bar is never an easy task.' [Citation.]" (*Harrington v. Richter* (2011) 562 U.S. 86, 105 [178 L.Ed.2d 624, 642] (*Richter*), quoting *Padilla v. Kentucky* (2010) 559 U.S. 356, 371 [176 L.Ed.2d 284, 297].)

The reason why *Strickland's* bar is high is because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. [Citation.] . . . It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' [Citations.] The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. [Citation.]" (*Richter, supra*, 562 U.S. at p. 105 [178 L.Ed.2d at pp. 642-643].)  " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

Here, whether there was evidence defendant did not intend to reverse his car into Nuno's patrol car, thus making it an accident, the record shows trial counsel made a tactical decision in not seeking an instruction on accident.  Perhaps because counsel reasonably expected the jury to find defendant's claim of accident unbelievable, rather than argue defendant lacked the intent to hit the patrol car, counsel argued there was no likelihood defendant's actions would result in great bodily injury.  Thus, counsel argued, the People failed to prove an element of assault with a deadly weapon.  Accordingly, counsel argued, defendant was "overcharged" and was, at most, guilty of misdemeanor simple assault.  The tactical decision was successful at least in part, as the jury was

unable to reach a verdict on three of the six charges of assault with a deadly weapon, resulting in a dismissal of those three charges.

Defendant argues on appeal that this case is "legally indistinguishable" from our recent decision in *People v. Hussain* (2014) 231 Cal.App.4th 261. We disagree. In *Hussain*, we found the defendant received ineffective assistance at trial because trial counsel failed to request an instruction on "claim of right." (*Id.* at p. 271.) We also found claim of right was the "core of defendant's defense . . . ." (*Id.* at pp. 270-271.) Thus, we concluded, there could be no tactical reason for failing to request "an instruction to support the core of the defense." (*Id*. at p. 271.) Accident was not the "core of defendant's defense" given the reasonable tactical decision made by his attorney here. Our decision in *Hussain* is not applicable to these circumstances.

In sum, we conclude defendant failed to prove that he received ineffective assistance of counsel at trial.

DISPOSITION

The judgment is affirmed.


                                                        HULL            , Acting P.J.



We concur:



        MAURO        , J.



        RENNER        , J.


7