Filed 2/18/25  P. v. McCleary CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN ALLAN MCCLEARY III,<br><br>Defendant and Appellant. | F087188<br><br>(Super. Ct. No. MF013951A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Brad L. Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Jospeh Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted defendant Benjamin Allan McCleary III of evading a pursuing peace officer while operating a motor vehicle with disregard for the safety of others. On appeal, defendant argues that his counsel was constitutionally ineffective (1) in failing to request that the jury be instructed that his voluntary intoxication prevented him from forming the specific intent to evade and (2) by successfully excluding evidence of blood test results that proved the presence of methamphetamine in his system during the offense. We conclude that the record of counsel's reasons for these strategic choices is insufficient to assess defendant's arguments and affirm the judgment because no evidence demonstrates the relationship between the level of methamphetamine in defendant's blood and its effect on his ability to form the specific intent to evade the officers.

## PROCEDURAL BACKGROUND

The District Attorney of Kern County filed an amended information on October 2, 2023, charging defendant with eluding a pursuing peace officer with intent to evade while operating a vehicle with disregard for the safety of persons or property (Veh. Code,[1] § 2800.2; count 1) and misdemeanor driving a vehicle under the influence of a drug (§ 23152, subd. (f); count 2). The amended information also alleged aggravating sentencing circumstances pursuant to California Rules of Court, rule 4.421. Defendant pleaded not guilty.

A jury convicted defendant on October 5, 2023, of eluding a pursuing peace officer as charged in count 1 and acquitted him of driving under the influence of a drug as charged in count 2. After defendant waived a jury trial regarding the aggravating circumstances, the court found them true. The court sentenced defendant to the upper term of three years and ordered him to pay $300 restitution and parole revocation

---

[1]     Undesignated statutory references are to the Vehicle Code.

restitution fines (Pen. Code, §§ 1202.4, 1202.45),[2] a $40 court operations assessment (Pen. Code, § 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).

Defendant filed a timely notice of appeal on November 20, 2023.

## FACTS

Kern County Sheriff Deputy Danielle Henderson, while patrolling in a department-issued vehicle on May 31, 2020, observed a vehicle stopped on the shoulder of the road near a mobile home park. Deputy Henderson initiated a traffic stop after the driver of the vehicle accelerated onto the road and ran a stop sign but, rather than pulling over, accelerated, ran another stop sign, and drove on the wrong side of the road. She requested assistance from the California Highway Patrol (CHP) and continued to follow at a distance after deactivating her overhead emergency lights. She saw a CHP officer arrive and initiate a traffic stop, and eventually she arrived at the location where the vehicles stopped.

After receiving information concerning the vehicle, on-duty CHP Officer John Rich saw the vehicle approaching his patrol car at a high rate of speed, confirmed by radar to be 93 miles per hour, and driving on the wrong side of the road. The driver, later identified as defendant, failed to pull over after Officer Rich initiated a vehicle stop and activated his emergency lights, and defendant continued to speed and drive on the wrong side of the road, both of which were traffic violations. During the pursuit, defendant also swerved off the road and ran a stop sign, also traffic violations. The driver also waved at the officers several times in a taunting manner. The pursuit covered approximately five miles, lasted approximately six minutes, and ended when defendant's vehicle crashed into a dirt embankment and officers ordered him from the vehicle.

---

[2] The November 20, 2023 minute order incorrectly reflects that the court ordered a $300 probation revocation restitution fine pursuant to Penal Code section 1202.44. We shall order the clerk of court to correct the minute order to reflect that this fine was a parole revocation restitution fine pursuant to Penal Code section 1202.45.

Defendant complied with orders to put his hands out the window, throw out the car keys, open the door from the outside, get out, put his hands up, and walk backwards to the officers. He was then arrested and searched. Officers located a shattered pipe for smoking methamphetamine that had been so used.

Defendant, after receiving *Miranda*[3] warnings, admitted that he had been smoking methamphetamine "the day before," described in the officer's report as "recently." Officer Rich believed defendant made the statement while at the hospital and after midnight, and that, therefore, defendant had admitted methamphetamine use on the day of the incident. Defense counsel questioned Officer Rich concerning a statement defendant made just after his arrest in which he denied smoking anything that day but admitted smoking something the day before, and Officer Rich testified that he believed defendant's response referred to marijuana.[4] Defendant also admitted that he knew he was supposed to stop when police emergency lights were activated. Defendant told the officer that he would have driven faster if his car had been able to do so, but his car would only go 90 miles per hour. Defendant was jovial and laughing after his arrest. Defendant also said that he knew the police were after him, but he had to get away from them.

Officer Rich was certain that defendant was not under the influence of alcohol based upon his training and experience. He observed that defendant's eyes were dilated, indicating possible drug impairment, and defendant's fingertips were burned and callused, which indicated repeated use of a lighter. Additionally, defendant's speech was rapid and erratic. Based upon these factors, Officer Rich believed that defendant was

---

[3]    *Miranda v. Arizona* (1966) 384 U.S. 436.

[4]    During the interview of defendant, the officer asked whether defendant had "smok[ed] anything tonight?" and defendant inquired, "Like what? Weed?" The officer replied, "That, or anything like that?" Defendant responded, "No," and that the last time he had done so was "[y]esterday."

4.

under the influence of a controlled substance. Methamphetamine can remain in an individual's system for eight to 12 hours and, in high doses, can cause anxiety, psychosis, and hallucinations.

Officer Rich testified that defendant's actions put everyone's life at risk, including defendant's. Officer Rich testified that he did not see any pedestrians during the pursuit. Responding to defense counsel's questions, Officer Rich testified that no other vehicles were in the area.

## DISCUSSION

### I. *Ineffective assistance of counsel.*

Defendant argues that he was denied effective assistance of counsel when defense counsel failed to request a voluntary intoxication instruction, although counsel argued that defendant's methamphetamine use prevented formation of his intent to evade law enforcement. Defendant also argues that counsel was constitutionally ineffective by successfully excluding evidence of methamphetamine in defendant's blood at the time of the offense because such evidence could have supported a voluntary intoxication defense. We find that neither argument may be resolved in this appeal inasmuch as defendant has failed to provide sufficient evidence that the level of methamphetamine in his blood affected his ability to form the necessary intent to evade law enforcement. Without this information, we are unable to assess either counsel's failure to request the voluntary intoxication instruction or decision to preclude admission of the results of defendant's blood test at his trial. Lacking a sufficient factual record as to why defense counsel made these decisions and whether defendant was prejudiced, we cannot conclude that defendant was denied effective assistance of counsel.

### A. Background

#### (1) *Defense counsel's motion to exclude blood test results*

Defense counsel requested a hearing to determine the foundation and chain of custody for admission of the laboratory results from tests of defendant's blood. The court

denied the motion but agreed to consider defendant's motion during trial testimony addressing the issue.

Officer Rich testified that, after transporting defendant to the hospital, he witnessed the nurse take blood from defendant and then took custody of the two vials containing defendant's blood. The vials remained in his or his partner's custody until booked into evidence. Maria Sanchez, a criminalist with the Kern Regional Crime Laboratory, testified that she performed a confirmation analysis on defendant's blood, which had already been screened for a panel of drug types, and identified the report of her results. The report, whose contents were not presented to the jury, provided that defendant's blood contained amphetamine in a concentration of 36 nanograms per milliliter and methamphetamine in a concentration of 303 nanograms per milliliter. Outside the presence of the jury, the court recapped a side-bar discussion which revealed that the technician who broke the seal on the evidence, someone other than Sanchez, no longer worked at the laboratory. While another individual could have provided photographs and testified as to the sealed condition of the sample when opened at the laboratory, that individual was not available to testify. Therefore, the trial court sustained defense counsel's objection to the lack of foundation establishing the chain of custody for defendant's blood samples and excluded the testimony as to the results of the blood tests.

### (2)    *Voluntary intoxication jury instruction*

The trial court instructed the jury that count 1 (evading) required it to find that defendant committed the prohibited act with the specific intent to evade the officer. The instructions did not include CALCRIM No. 3426, voluntary intoxication,[5] which defense counsel neither requested nor objected to its omission.

---

[5]    CALCRIM No. 3426 provides in pertinent part that the jury "may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted [or failed to do an act] with" the specific intent required by the offense and not for any other purpose. It also provides that the jury may not consider evidence of voluntary intoxication for any other purpose.

In closing argument, defense counsel argued that defendant could not form the specific intent to evade as required for conviction of count 1 because defendant was under the influence of methamphetamine[6] and reminded the jury of Officer Rich's testimony about the effects of methamphetamine on defendant's behavior and body. Additionally, methamphetamine prevented defendant from being aware that his actions presented a substantial unjustifiable risk of harm and from intentionally ignoring the risk because it prevented him from thinking properly.[7]

## B. Applicable Law and Standard of Review

Under either the state or federal Constitution, "to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient[,] and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.) "To demonstrate deficient performance, [a] defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.] To demonstrate prejudice, [a] defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*Mickel, supra*, 2 Cal.5th at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a

---

[6]     Defense counsel's argument included his concession that defendant was guilty of count 2, driving under the influence.

[7]     Defense counsel also argued that the prosecutor failed to provide evidence that defendant's three traffic violations would have provided him any traffic violation points, an alternate way of proving felony evading a police officer.

reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*Ibid.*)

"Accordingly, [our Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Mickel, supra*, 2 Cal.5th at p. 198.) If the record fails to disclose why trial counsel acted or failed to act in the manner challenged, the ineffective assistance of counsel claim must be rejected unless counsel was asked for and failed to provide an explanation, or there could be no plausible explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

Under section 2800.1, it is a misdemeanor to flee willfully in a motor vehicle from a uniformed peace officer in a marked patrol car with lights flashing and siren sounding. Under section 2800.2, the offense is a felony if the evader drives with willful or wanton disregard for the safety of persons or property. The statute further provides: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [s]ection 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).) The definition of "willful or wanton," therefore, may be proven if defendant committed three or more traffic violations that are assigned a traffic violation point count under section 12810, damaged property, or drove in a manner that was otherwise "willful and wanton." (*People v. Mutuma* (2006) 144 Cal.App.4th 635, 641.)

Section 12810 provides that several specifically enumerated violations, none of which are at issue here, are assigned one or two points.  (§ 12810, subds. (a)–(e), (h).)  It also contains the catch-all clause providing that, with certain exceptions, "any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point."  (§ 12810, subd. (f).)

C.      **Defense Counsel's Failure to Request an Instruction on Voluntary Intoxication**

CALCRIM No. 3426 specifically states the jury may consider evidence of a defendant's voluntary intoxication when "deciding whether the defendant acted … with" the "specific intent or mental state required."  Defense counsel did not request this instruction, and defendant contends the failure to request CALCRIM No. 3426 constitutes prejudicial ineffective assistance of counsel.  We disagree.  In the present case, we find no affirmative evidence that counsel lacked a "rational tactical purpose" for failing to request CALCRIM No. 3426.  (*Mickel, supra*, 2 Cal.5th at p. 198.)  We thus do not know why counsel did not request it, and "[r]ather than attempt to glean inferences from a record where the critical questions were irrelevant and unasked, we do not reach the merits of that issue."  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 268.)

"A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration."  (*People v. Marshall* (1997) 15 Cal.4th 1, 39.)  To justify an instruction on voluntary intoxication, there must not only be substantial evidence of the defendant's voluntary intoxication, but there must also be substantial evidence this intoxication "affected the defendant's 'actual formation of specific intent.' "  (*People v. Williams* (1997) 16 Cal.4th 635, 677; see *People v. Saille* (1991) 54 Cal.3d 1103, 1117; *People v. Verdugo* (2010) 50 Cal.4th 263, 295.)  " 'The mere fact that a defendant may have been [using drugs] prior to the commission of a crime does not establish intoxication or require the giving of a requested instruction thereon.' "  (*People v. Spencer* (1963) 60 Cal.2d 64, 87.)

9.

In this case, the circumstantial evidence of defendant's intoxication was ambivalent. Officer Rich was certain that defendant was not under the influence of alcohol due to zero results of a preliminary test, but defendant's dilated eyes and rapid and erratic speech indicated he was possibly under the influence of a drug. Officers found a shattered pipe for smoking methamphetamine that showed signs of use, and defendant's fingers were burned and callused, indicating lighter use and contact with a high-heat item such as a pipe, evidencing defendant had used methamphetamine previously. However, no evidence indicates whether the burns were recent or when the pipe had been used before breaking. Officer Rich also testified that methamphetamine may remain in an individual's system for eight to 12 hours and, in high doses, can cause anxiety, psychosis, and hallucinations. The evidence also indicates that defendant admitted using methamphetamine but was not clear as to whether he used the drug earlier on the day of the incident or the day before.

Even if this evidence is substantial enough to support a conclusion that defendant used methamphetamine within a day or two of the offense or was intoxicated during the offense, there is no evidence whether the timing of his drug use or his physical symptoms support a finding that his drug use affected whether he could have formed the intent to evade law enforcement. (See *People v. Marshall* (1996) 13 Cal.4th 799, 848 [evidence did not require the giving of the requested instructions on intoxication despite evidence the defendant had been drinking an unknown amount of alcohol over several hours where there was no evidence of the effect of the defendant's alcohol consumption on his state of mind]; *People v. Ramirez* (1990) 50 Cal.3d 1158, 1180–1181 [no instruction necessary where the defendant was able to give detailed account of crime following his arrest notwithstanding evidence of intoxication], overruled on another ground in *People v. Saille, supra*, 54 Cal.3d at pp. 1118–1119; *People v. Cram* (1970) 12 Cal.App.3d 37, 43–44 [no instruction necessary despite testimony that the defendant had been drinking throughout the offense and was described as "a 'little high' " and " 'pretty drunk,' " as

mere fact the defendant may have been drinking does not establish intoxication or require provision of diminished capacity instruction].)

We note that the evidence shows defendant was clearheaded enough to follow the officer's commands to put his hands out the window, throw out the car keys, open the door from the outside, get out, put his hands up, and walk backwards to the officers. Defendant also admitted that he knew he was supposed to stop when police emergency lights were activated, he would have driven faster if his car had been able to do so, and that he knew the police were after him, but he had to get away from them.

In this case, the court gave instructions explaining the specific intent required to convict defendant of evading a peace officer and the lesser included offense, and defendant does not challenge any aspect of these instructions on appeal. In light of the properly given instructions on the intent required for evading a peace officer and insubstantial evidence of facts to support giving an instruction on voluntary intoxication, we conclude defendant has failed to show there could be no reasonable tactical basis for counsel's failure to request CALCRIM No. 3426. A conceivable tactical reason for declining to ask for the instruction is that defense counsel believed the evidence was insufficient to justify giving the instruction.

Instances in which there is no conceivable tactical purpose for counsel's actions are rare. (*People v. Lopez* (2008) 42 Cal.4th 960, 972.) Defendant cities and relies on *People v. Hussain* (2014) 231 Cal.App.4th 261 as one such instance, but that case is inapposite. In *Hussain*, a jury convicted Hussain of theft by larceny despite Hussain's testimony that he believed he had a right to the property. (*Id.* at pp. 267–268.) Hussain argued court error and ineffective assistance of counsel resulted in the failure to instruct the jury on the claim of right defense. (*Id.* at p. 268.) The appellate court found no trial court error but decided counsel's failure to request a claim of right instruction constituted prejudicial ineffective assistance of counsel because "claim of right" was the only defense. (*Id.* at pp. 271–272.) We note, however, the Attorney General in *Hussain*

11.

conceded substantial evidence supported giving a claim of right instruction. (*Id.* at p. 264.) The Attorney General makes no similar concession here, and there is no substantial evidence in this case that voluntary intoxication affected defendant's ability to form specific intent.

Without evidence that defendant's drug use resulted in his intoxication and inability to form the specific intent to evade the officer, defendant has not demonstrated on appeal that defense counsel was constitutionally ineffective. Because the record sheds no light on why counsel did not request the instruction, and we cannot conclude that there can be no satisfactory explanation for counsel's failure to act, the matter is more appropriately addressed in a petition for a writ of habeas corpus should defendant choose to do so. (*People v. Miller* (1972) 7 Cal.3d 562, 574, fn. 11.)

### D. Defense Counsel's Decision to Exclude Defendant's Blood Test Results

Defendant argues that defense counsel's primary defense to evading a peace officer was that defendant was unable to form the specific intent to evade due to methamphetamine intoxication. Therefore, defense counsel failed to provide effective assistance of counsel by objecting to admission of defendant's blood test and failing to introduce evidence of the results.

We disagree that defendant has proven defense counsel was ineffective for the same reasons we rejected the argument above: While the blood test results provide evidence that methamphetamine was present in defendant's blood, the results standing alone provide no basis for believing that defendant was intoxicated or that the level of methamphetamine could have affected defendant's ability to form the specific intent to evade. Because the record sheds no light on why counsel elected to exclude defendant's blood test results, we cannot conclude that there can be no satisfactory explanation for counsel's failure to act. It is possible that expert testimony could not support an argument that the level of methamphetamine found in defendant's blood could have affected his ability to form the specific intent to evade. This would provide a plausible explanation

for defense counsel's tactical decision to prevent admission of the test results, as it would provide an advantage in defending the offense of driving under the influence as charged in count 2 (for which defendant was ultimately acquitted).  By excluding the test results, defense counsel preserved his ability to argue that methamphetamine use interfered with defendant's ability to form specific intent to evade the officers.

Therefore, we conclude that defendant has not demonstrated, on appeal, that defense counsel was constitutionally ineffective and the matter is more appropriately addressed in a petition for a writ of habeas corpus should defendant choose to do so. (See *People v. Miller, supra*, 7 Cal.3d at p. 574, fn. 11.)

## DISPOSITION

The clerk of court is ordered to amend the November 20, 2023 minute order to reflect that the trial court ordered defendant to pay a $300 parole revocation restitution fine pursuant to Penal Code section 1202.45 and not a probation revocation fine pursuant to Penal Code section 1202.44.  The judgment is otherwise affirmed.


HILL, P. J.

WE CONCUR:


DE SANTOS, J.


FAIN, J.*

---

\*     Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13.