Filed 3/22/16  P. v. Montellano CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B257452 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA100661) |
| v. | |
| THOMAS MONTELLANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mike Camacho, Judge.  Affirmed.

Albert J. Garcia for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Alene M. Games, Deputy Attorney General, for Plaintiff and Respondent.

_____

Thomas Montellano appeals from the judgment entered following a jury trial in which he was acquitted on one count of first degree residential burglary (Pen. Code, § 459) and convicted on one count of grand theft of a firearm (Pen. Code, § 487, subd. (d)(2)).[1] The trial court sentenced appellant to an aggregate term of nine years in state prison, consisting of the midterm of two years, doubled for a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), plus a five-year serious felony enhancement (§ 667, subd. (a)(1)).

Appellant contends: (1) the trial court's remarks concerning appellant's absence from the last day of trial constituted prejudicial misconduct, and violated appellant's due process rights; (2) the trial court committed prejudicial error when it instructed that the jury could regard appellant's absence from the last day of his trial as "flight"; (3) appellant's conviction is not supported by substantial evidence; and (4) the trial court abused its discretion in denying appellant's motion to strike his prior strike conviction. We disagree and affirm.

## FACTUAL BACKGROUND

In October 2012, appellant's brother, Albert Montellano,[2] was living in the house on Hacienda Boulevard where he and appellant had grown up, which he had acquired sometime after his parents' divorce. Appellant was living with his mother, Celia, but he still received mail at the Hacienda Boulevard house. Celia had a key to Albert's house, and she and appellant visited family members there several times a month. Appellant occasionally brought his children over to swim in the pool. Although Celia had unrestricted access to the house, Albert had told Celia that appellant was not allowed to visit when Albert was not home.

In 2011, appellant's father, Thomas Sr., was no longer able to live alone due to failing health and moved back into the house with Albert. Thomas Sr. was a musician

---

[1] Undesignated statutory references are to the Penal Code.

[2] We refer to individuals who share the same surname by their first names.

and owned several trumpets, which he kept at Albert's house. At some point Thomas Sr. had given one of the trumpets to appellant for appellant's son to play, but took it back sometime in 2011. Albert, who also played the trumpet, believed that his father had given all of his trumpets to Albert.

On October 9, 2012, appellant and Celia went to Albert's house to visit Thomas Sr. and to retrieve the trumpet previously given to appellant's son. Mary Lara, who rented an upstairs bedroom from Albert, was the only person home at the time. Appellant told Lara he was there to see his father and mentioned he was looking for a trumpet his father had given him. But neither Albert nor Thomas Sr. was home: Albert was away for the weekend, and Thomas Sr. had gone to the hospital a few days earlier.

Upon learning that both Albert and Thomas Sr. were away, appellant proceeded directly to Albert's bedroom, where he forced the door open, breaking the lock. Appellant entered the room, and Celia followed. Celia testified that after looking around the room for the trumpet, she took a rifle from the closet for "safety purposes" and as collateral for the trumpet. Celia and appellant then left the house together. According to Celia, appellant walked away from Albert's house and she did not see him again for three months. Celia also testified that when she returned home, she put the rifle in her garage.

After appellant and Celia left, Lara telephoned Albert and told him appellant had broken into his bedroom. Albert called the police. During the subsequent investigation, Lara and Celia told deputies that appellant had kicked in Albert's bedroom door and left the house carrying the rifle. Celia told police that after leaving Albert's house, she and appellant drove home, and appellant later left in her truck.

Police recovered the rifle from Celia's garage. Celia explained to police that she had received an anonymous phone call from a person purporting to speak for appellant who told her the rifle was in her garage. The caller had asked Celia to relay a message to Albert that appellant "was sorry for kicking in the door. . . . He was returning the gun. He was sorry for taking the gun. He'll repair everything. He wants his brother to drop all the charges because he's on probation."

3

# DISCUSSION

## I. Appellant's Conviction Finds Substantial Evidentiary Support in the Record

Appellant contends the evidence was insufficient to support his conviction for grand theft of a firearm, on the grounds that: (1) the prosecution failed to present evidence establishing Albert's ownership of the rifle; and (2) there was no evidence that appellant intended to permanently or for an extended period of time deprive the owner of the rifle of its value or enjoyment. Appellant's claim is without merit.

In reviewing a challenge to the sufficiency of the evidence, we examine the whole record in the light most favorable to the judgment, drawing all reasonable inferences in favor of the verdict, and presuming "'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Further, "'"[a]lthough it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'" [Citation.]' [Citation.]" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263; *People v. Lindberg* (2008) 45 Cal.4th 1, 27; *People v. Kraft*, *supra*, at pp. 1053–1054.)

To establish grand theft of a firearm, the prosecution was required to prove: (1) appellant took possession of a firearm owned by someone else; (2) appellant took the firearm without the owner's consent; (3) when appellant took the firearm he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of its value or enjoyment; and (4) appellant moved the firearm, even a small distance, and kept it for any period of time, however brief. (§§ 484, 487, subd. (d)(2); *People v. Davis*

4

(1998) 19 Cal.4th 301, 305; *People v. Williams* (1946) 73 Cal.App.2d 154, 157; CALCRIM No. 1800.)

Appellant contends that the evidence failed to establish Albert's ownership of the rifle, but instead showed that the firearm belonged to the family in a collective sense. In so arguing, appellant points to Albert's testimony that the rifle had been in the family home (now owned by Albert) for over a quarter of a century, and Albert's use of the indefinite article "a" when testifying to his discovery that "a rifle" was missing from the closet in his locked bedroom. But Albert identified the rifle in the photograph as *his* rifle. He further testified that he had kept the rifle in the closet of his locked bedroom in the house he owned. Thus, despite appellant's characterization of Albert's testimony about his ownership as "equivocal" and "inconsistent with what would reasonably be expected from the owner of the rifle," the evidence was nevertheless sufficient to support the conclusion that Albert was the rightful owner of the rifle.

Appellant's claim that there was insufficient evidence that he intended to deprive his brother of the rifle permanently or for an extended period of time fails as well. The intent element of theft may be "satisfied by the intent to take the property only temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment." (*People v. Avery* (2002) 27 Cal.4th 49, 52.) "Evidence of intent to commit a theft 'is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances.' [Citation.]" (*People v. Hussain* (2014) 231 Cal.App.4th 261, 273.)

Appellant concedes that he took the rifle "as a sort of 'collateral' to ensure return of the trumpet to appellant." In light of abundant evidence that appellant kicked in Albert's locked bedroom door in search of the trumpet, the jury could readily infer that appellant was prepared to keep his brother's rifle for as long as would be necessary to get Albert to turn over the trumpet. We thus find the evidence of appellant's intent sufficient to sustain his conviction for grand theft of the firearm.

5

**II. The Trial Court Did Not Err in Informing the Jury of Appellant's Voluntary Absence from Trial, and Appropriately Instructed the Jury Regarding Flight**

**A.** *Relevant Background*

Appellant was present for the first two days of trial, but failed to appear the morning of the third day, and was absent for the remainder of the trial. Outside the presence of the jury, the trial court noted that appellant had been ordered to appear at 9:00 a.m. Defense counsel reported that he had spoken with his client the night before regarding preparation for that day's proceedings. When he spoke to Celia that morning, she had told him that appellant's girlfriend had picked appellant up at 7:00 a.m. The attorney had neither heard from appellant nor had he been able to locate him after leaving multiple messages on the girlfriend's cell phone.

After discussions regarding jury instructions, the court noted appellant's continued absence. Defense counsel advised the court that he was still unable to reach appellant. After finding appellant's absence to be voluntary, the court declared the trial would proceed without him. Defense counsel objected to proceeding in appellant's absence and requested a continuance, arguing that the specific reason for appellant's failure to appear was unknown, and extreme prejudice would result from proceeding without him. The court denied the continuance, finding that appellant was with his girlfriend who was simply not returning phone calls, and was attempting to impede the judicial process with his absence. The court also stated its inclination to permit the People to argue consciousness of guilt through flight based on appellant's voluntary absence.

The court then addressed the jury:

"On record in the matter of People versus Thomas Montellano. Now, Mr. Montellano is not present before the court as I speak, but he continues to be represented by counsel, Mr. Ellis. . . . [¶] . . . [¶] Mr. Thomas Montellano, as you can plainly see, has chosen not to attend this trial. He has voluntarily evidently absented himself from this trial but his decision will not delay these proceedings any further. We're going to continue in his absence. He has a right to be present during his trial. But

6

if he chooses not to attend, that is his right evidently and he has chosen not to attend. Now, the court did order him to return to this courtroom at 9:00 this morning. I've given him plenty of time to return. We've had no contact with him. Now, he was ordered to return to court, which means that he is under court order to return. The fact that he has failed to appear shows a violation of a court order. Even though he has a right to be present during his trial, he can choose obviously to waive that right and not be present but he cannot ignore a court order to attend. So technically he is supposed to be here and he has chosen not to be here. So we're going to proceed in his absence, which the law permits. And you will be instructed accordingly as to how you can consider Mr. Montellano's decision not to attend this trial in your consideration of the evidence in this case."

Thereafter, on six separate occasions, the court reminded the jury that appellant was voluntarily absent from the proceedings.

In concluding instructions to the jury, the court instructed that appellant's voluntary absence from the trial could be considered "flight." Immediately after the court gave the flight instruction, a juror asked the court a question:

Juror:        "Would that be an aspect with his not being here?"

The Court:    "Absolutely."

Juror:        "I mean—"

The Court:    "Well, one second. I can't get into a debate on the subject. All I can tell you is that this instruction—"

Juror:        "His absence in [*sic*] unexcused or unexplained?"

The Court:    "Absolutely. The jury will be permitted to consider that as evidence of flight in considering whether or not he had a consciousness of guilt. [¶] Now, again, as the law reads—and I can't debate the issue with you or get into—"

Juror:        "I'm not debating."

The Court:    "Or get into a discussion, I should say; a poor use of words on my part. Just follow the law. The law says if you conclude, as an individual juror, even as a unanimous jury, that the defendant fled or tried to flee, including his conduct recently as

7

today, you can consider that conduct in reaching your verdict. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself. So consider the law, and you can apply it to everything that has transpired up to and including the defendant's absence today."

Following closing arguments by counsel, the same juror attempted to pose another question to the court, but the court explained that there was a procedure for asking questions that must be followed. The juror made no further inquiry, and no questions were submitted by the jury during deliberations. That afternoon, the jury returned verdicts acquitting appellant of burglary and convicting him of grand theft of a firearm.

Before commencing the trial on appellant's prior convictions, the trial court again discussed appellant's continued absence with defense counsel outside the presence of the jury. Counsel advised the court that appellant's girlfriend and mother had told him that they brought appellant to the courthouse, and "he's still nervous in the parking lot." Defense counsel added, "Just to be clear, I haven't seen him personally. That's what they tell me. I've been on the phone with him all night trying to get him in here." The court took a 15-minute recess for appellant to return to the courtroom. But appellant failed to appear, and eventually the trial on appellant's priors proceeded without him.

### B. *Appellant's Claims of Judicial Misconduct and Instructional Error Are Forfeited*

Appellant contends the trial court's alleged judicial misconduct took three forms: (1) repeatedly calling attention to, and thereby improperly emphasizing, appellant's voluntary absence from trial; (2) disclosing to the jury that appellant had been under a court order to return to court, and that his voluntary absence was a violation of that order; and (3) instructing the jury that it could regard appellant's absence during trial as "flight," and determine whether such flight evidenced a consciousness of guilt. Appellant's failure to object below forfeited these claims on appeal.

Defense counsel objected to proceeding with trial in appellant's absence, but was silent as to the trial court's admonition that appellant's absence violated a court order as well as its repeated reminders to the jury regarding appellant's voluntary absence from

8

trial. The lack of any objection or request for an admonition to the jury forfeited the claim on appeal that these remarks constituted judicial misconduct which violated appellant's due process rights. (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237 ["As a general rule, judicial misconduct claims are not preserved for appellate review if no objections were made on that ground at trial"]; *People v. Snow* (2003) 30 Cal.4th 43, 77–78.) Similarly, appellant's claim that the trial court improperly instructed on flight was forfeited by the failure to object below. (*People v. Sanders* (1995) 11 Cal.4th 475, 533.) Further, it does not appear that objections to the trial court's statements regarding appellant's absence or the flight instruction would have been futile. (*People v. Snow*, at p. 78; *People v. Sanders*, at p. 531.) Indeed, the trial court gave defense counsel ample opportunity to secure the presence of his client, and properly weighed counsel's objection to proceeding without appellant.

In any event, as we explain below, even if not forfeited, appellant's claims lack merit.

C. ***The Trial Court's Remarks to the Jury Regarding Appellant's Voluntary Absence from Trial Did Not Constitute Judicial Misconduct, Nor Did They Occasion Any Violation of Appellant's Due Process Rights***

Appellant asserts that the court should have admonished the jury against considering or speculating about appellant's absence, rather than "decreeing" that his absence constituted a violation of the court's order to appear. But defense counsel requested no such admonition, and the trial court had no sua sponte duty to instruct the jury not to consider appellant's voluntary absence. (*People v. Sully* (1991) 53 Cal.3d 1195, 1241.) Unlike the appearance of a shackled defendant before the jury, our Supreme Court has held that "[n]o similar inference of prejudice arises when a defendant voluntarily absents himself and the jury is so informed." (*Ibid.*)

Appellant goes on to characterize the court's disclosure to the jury that appellant's failure to appear constituted a violation of a direct court order as a serious and prejudicial instance of judicial misconduct requiring reversal. We disagree.

9

Citing section 1320.5, which makes it a felony for a person charged with a felony to willfully fail to appear in order to evade the process of the court, appellant contends that the court's statement incriminated appellant before the jury. Appellant continues: "The Star Chamber trial and conviction of appellant for the uncharged offense of 'failure to appear'—proceedings conducted in the secretive recesses of the trial judge's own mind—followed by the very public pronouncement of appellant's guilt of the offense in open court, and in the presence of the jury, was extravagant judicial misconduct that deprived appellant of his due process rights."

However, even if the court's reference to appellant's violation of a court order was improper, the record is devoid of any evidence of prejudice based on the court's statement. The court's statement informing the jury that appellant had been ordered to return to court, and by his voluntary absence had violated that order, falls far short of a declaration that appellant was guilty of a separate criminal offense based on his voluntary absence, much less a "Star Chamber trial and conviction " of the uncharged felony of failing to appear. Appellant's hyperbole is no substitute for a demonstration of actual prejudice. In light of an acquittal on the most serious charge appellant was facing (first degree burglary) and the abundant evidence supporting his conviction on the grand theft charge, appellant has failed to show that the court's statement had any adverse effect on the verdict whatsoever. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

"The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial. [Citation.]' (*People v. Snow*, *supra*, 30 Cal.4th at p. 78.)" (*People v. Harris* (2005) 37 Cal.4th 310, 347.) In the absence of any showing of prejudice, the record in this case does not support appellant's claim that he was deprived of his constitutional right to a fair trial or an impartial judge.

**D.** *The Trial Court Properly Instructed the Jury Regarding Flight Based on Appellant's Voluntary Absence from Trial*

Contending the flight instruction applies only when the evidence shows the defendant departed the crime scene to avoid arrest, appellant asserts that the record does not support the application of the flight instruction to appellant's voluntary absence during his trial.[3]  We disagree.

CALCRIM No. 372[4] allows the jury to draw an inference of consciousness of guilt if it finds the defendant fled the scene of a crime to avoid observation or arrest, *or* if it finds the defendant fled after he was accused of committing the crime.  (*People v. Snyder* (1976) 56 Cal.App.3d 195, 198–199 (*Snyder*); *People v. Vargas* (1975) 53 Cal.App.3d 516, 530 (*Vargas*).)  In *Snyder,* the defendant was absent following jury selection and remained so until after a verdict had been reached.  On appeal the court upheld the trial court's flight instruction, noting:  "[I]n the absence of any explanation it would be reasonable to infer that defendant's absence was voluntary and it was a fact relevant to the determination as to his guilt or innocence.  [Citation.]  'It was for the jury to determine whether appellant's conduct amounted to flight and the significance and weight to be attached to such circumstance.'  [Citation.]"  (*Snyder*, at p. 199.)

Similarly, in *Vargas*, the defendant was present for jury selection but failed to appear the following day for trial, and the trial proceeded without him.  The trial court informed the jury that although the defendant had been there earlier, he apparently had voluntarily left the courthouse.  The defendant did not return for the remainder of the trial, and the court instructed the jury that it could consider the defendant's absence in

---

[3] Appellant left town immediately after the incident, and does not contend the trial court erred in instructing the jury on flight based on that fact.

[4] CALCRIM No. 372 provides:  "If the defendant fled or tried to flee immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

deciding his guilt or innocence. (*Vargas*, *supra*, 53 Cal.App.3d at pp. 522–523, 529; CALJIC No. 2.52.) On appeal, the defendant claimed error based on the lack of evidence before the jury concerning the reasons for defendant's absence and because the instruction permitted an adverse inference based on the defendant's failure to testify. (*Vargas*, at p. 530.) The appellate court rejected both arguments, holding that in order for the trial to proceed, the trial court was required to assess the reasons for defendant's absence to make a finding as to whether the absence was voluntary. (*Ibid.*) But the reasons for defendant's absence were irrelevant to the jury, which was only to be informed the absence was voluntary and determine for itself the weight to be given the evidence of defendant's absence. (*Ibid.*) As for the defendant's constitutional right not to testify, the court explained: "The flight instruction only permitted an inference to be drawn from the defendant's failure to be physically present. The jury were expressly instructed not to consider or draw any inferences from his failure to testify." (*Id.* at pp. 530–531.)

Here, as in *Snyder* and *Vargas*, appellant's voluntary absence in the middle of trial constituted "some evidence of flight" (*Vargas*, *supra*, 53 Cal.App.3d at p. 530), and the jury was appropriately instructed that it could consider that evidence in deciding his guilt or innocence.

We find no indication the jury misconstrued the flight instruction, or placed undue emphasis on appellant's absence in rendering its verdicts. We review the instructions as a whole to determine whether it is reasonably likely that the jury misconstrued them. (*People v. Roybal* (1998) 19 Cal.4th 481, 527; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1134; *People v. Frye* (1998) 18 Cal.4th 894, 957, overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In *People v. Frye*, our Supreme Court held: "In conducting this inquiry, we are mindful that '"a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."'" (*People v. Frye*, *supra*, 18 Cal.4th at p. 957, quoting *Boyde v. California* (1990) 494 U.S. 370, 378 [110 S.Ct. 1190, 1196]; see also *People v. Burgener* (1986) 41 Cal.3d 505, 538 ["the

correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction"], overruled on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 753.)

In addition to the flight instruction, the trial court gave CALCRIM No. 200, which cautioned jurors to "[p]ay careful attention to all of these instructions and consider them together. [¶] . . . [¶] Do not assume just because I give a particular instruction that I am suggesting anything about the facts." The flight instruction itself informed jurors that a defendant's voluntary absence "cannot prove guilt by itself." The trial court further instructed regarding the presumption of innocence and the People's burden to prove guilt beyond a reasonable doubt (CALCRIM No. 220), as well as a defendant's absolute, constitutional right not to testify (CALCRIM No. 355). These instructions insured that the flight instruction did not undermine the presumption of innocence or relieve the prosecution of its burden to prove appellant's guilt beyond a reasonable doubt.

**E.** ***Nothing the Trial Court Said Removed the Question of Whether Appellant's Absence Constituted "Flight" from the Jury's Consideration***

Appellant contends that the court essentially directed the jury to find that appellant's voluntary absence during trial constituted "flight." With that "judicial determination," appellant argues, "the jury did not have to decide the threshold question of whether a flight had, in fact, occurred, in order to consider whether that conduct evidenced a consciousness of guilt." We disagree.

In responding to the juror's question, the court admonished the jury to follow the law, explaining that *if* the jury concluded that appellant's absence from trial constituted flight, that conduct could be considered in reaching a verdict. The court also emphasized that evidence of flight could not prove guilt by itself. Thus, the flight instruction and the court's explanation regarding its application placed the determination of whether appellant's absence constituted "flight" squarely with the jury.

Moreover, as set forth above, appellant has failed to demonstrate any prejudice from the court's remarks about appellant's absence, even if they could be described as a

"judicial determination" on the issue of flight.  The jury acquitted appellant of burglary. And the evidence of appellant's theft of the rifle from his brother's locked bedroom was overwhelming.  On these facts, there appears no reasonable probability that a result more favorable to appellant would have been reached absent the court's alleged misdirection on the issue of flight.  (*People v. Silva* (1988) 45 Cal.3d 604, 628; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## III.  The Trial Court Properly Exercised Its Discretion in Denying Appellant's Motion to Strike His Prior Conviction

Appellant contends that the trial court abused its discretion in denying his motion to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530 (*Romero*), because the ruling was premised on unsupported assumptions that the court improperly found to be "aggravating."  We disagree.

We review the trial court's refusal to dismiss appellant's prior strike conviction under the deferential abuse of discretion standard.  (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)   A trial court's authority to depart from the sentencing norm established by the Three Strikes law and find an exception to the law's application is narrowly circumscribed.  Indeed, "a strong presumption [exists] that any sentence that conforms to the law's paradigm is both rational and proper."  (*Carmony*, *supra*, at p. 378.)  "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances."  (*Ibid.*)

Reviewing the trial court's ruling, we "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); *Carmony*, *supra*, 33 Cal.4th at p. 377.)  A trial court's refusal to strike constitutes an abuse of discretion only in an "extraordinary case" where "its decision is so irrational or

14

arbitrary" and the relevant factors so "manifestly support the striking of a prior conviction" that "no reasonable minds could differ." (*Carmony*, at pp. 377–378.)

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978 (*Alvarez*); *Carmony*, *supra*, 33 Cal.4th at pp. 376–377.) Thus, it is not enough to show that reasonable minds may differ over whether to strike a defendant's prior conviction, and "'"[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' [Citation.]" (*Carmony*, at p. 378.)

In determining that appellant did not fall outside the spirit of the Three Strikes law, the trial court cited appellant's extensive criminal history, which included seven misdemeanor convictions since 1986, one prior prison term, and two felony convictions—one in 1992 (burglary, § 459) and the other in 2001 (criminal threats, § 422). The court emphasized that appellant was on a three-year grant of probation on two separate cases when he committed the current offense. Observing that several of the misdemeanors could have been charged as felonies, and appellant had benefited from judicial leniency on several occasions, the trial court declared that such "efforts to be lenient with [appellant] in the past have miserably failed." The court concluded, "It's time for [appellant] to be punished with basically the strike intact for the first time." In light of these factors we do not consider the trial court's decision to be irrational or arbitrary.

An abuse of discretion also occurs "where the court considered impermissible factors in declining to dismiss. [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Appellant contends that the trial court relied on factors in aggravation that were unsupported by the record, and thus abused its discretion in declining to strike appellant's

15

prior conviction.  We disagree.  As respondent observes, the court expressly did not rely on any of the factors in aggravation it had found, declaring that the factors in mitigation "washed out" those in aggravation.  Thus, no impermissible factors figured into the trial court's denial of the *Romero* motion.

We also reject appellant's claim that the denial of the *Romero* motion resulted in an unfair and excessive sentence for the theft of a rusty, old family rifle.  In so arguing, appellant focuses on a single factor—the nature and circumstances of appellant's *current* offense—to the exclusion of all others.  (See *People v. Garcia* (1999) 20 Cal.4th 490, 501.)  Were we to hold that this factor should predominate over other appropriate considerations, we would be improperly substituting our own judgment for that of the trial court, and thereby eviscerating the trial court's discretion under the Supreme Court's decisions in *Romero* and *Williams*.  (*Carmony*, *supra*, 33 Cal.4th at p. 379; *Alvarez*, *supra*, 14 Cal.4th at p. 979.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.


16