Filed 6/16/25  P. v. Zauszniewski CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUNNAR ZAUSZNIEWSKI,<br><br>    Defendant and Appellant. | 2d Crim. No. B333434<br>(Super. Ct. No. SA103023)<br>    (Los Angeles County) |

Gunnar Zauszniewski appeals his conviction, by jury, of the attempted murder by stabbing of Tyler Kinney-Spears, (Pen. Code, §§ 187, subd. (a), 664)[1], mayhem (§ 203) and assault with a deadly weapon.  (§ 245, subd. (a)(1).)  The trial court sentenced appellant to 10 years in state prison.

Appellant contends the trial court abused its discretion when it denied his motion for mental health diversion (§ 1001.36), and his motion for a continuance of the trial date.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Appellant further contends his counsel was ineffective because counsel did not request the jury be instructed in terms of CALCRIM No. 3428, addressing the impact of mental illness on his ability to form the mental state required for the alleged crimes. Appellant contends there is no substantial evidence he formed the specific intent to kill the victim. Finally, appellant contends, and respondent concedes, that he is entitled to 1,250 days of presentence custody credit rather than the 1,214 days awarded by the trial court. We will order the judgment modified to award the correct credits and, in all other respects, affirm.

*Facts*

On the morning of August 6, 2020, a Santa Monica Police Public Service Officer, Lemont Davis, saw appellant and another man playing with a knife in a Santa Monica city park. The two men were running in circles while appellant swung the knife at his companion. Eventually, they fell to the ground. Both men got up, laughed and hugged each other. Davis asked appellant to put the knife down. Appellant replied, "Eat a dick." He and the other man walked away.

Tyler Kinney-Spears was sleeping on the grass nearby. Appellant walked past the sleeping man, knelt down and stabbed him in the abdomen. Then, appellant ran away through the park. Davis watched this happen as did two Santa Monica police officers who had responded to the park after patrons reported a man brandishing a knife. The officers chased appellant on foot. He dropped the knife after being tasered and was arrested. Other officers found Kinney-Spears and took him to the hospital.

At the jail, appellant was interviewed by two detectives. He gave them a false name, denied having a knife

2

and denied stabbing anyone.  Later during the interview, appellant stated that he might have blacked out because he was "doing" methamphetamine.  He denied knowing that he stabbed anyone but apologized if he did so while blacked out.  When the detective told appellant that the victim was going to be fine, appellant responded, "I know he's going to be okay, but the point is, I still stabbed him.  And that's so wrong, at the end of the day."

The interviewing detective did not think appellant was under the influence during the interview.  One of the arresting officers, however, described appellant as being under the influence of a stimulant because his eyes were wide open, his pupils were dilated, he was sweating profusely, he was unresponsive to commands and was twitching.

*Procedural History*

Defense counsel expressed doubt as to appellant's mental competence in September 2021.  The trial court found appellant not mentally competent (§ 1368) and adjourned the criminal proceeding.  Appellant's competency was restored and the criminal proceedings were reinstated in April 2023.  Defense counsel filed a motion for mental health diversion.  (§ 1001.36.)  The attached doctor's report, prepared during appellant's 2021 competency evaluation, diagnosed him with "Unspecified Bipolar and Related Disorder," and noted that he may also suffer from schizoaffective disorder and stimulant use disorder.  The motion for mental health diversion did not identify a specific treatment program that would accept appellant and in which he consented to participate.

The trial court denied the motion for two reasons.  First, it was not satisfied that any inpatient or outpatient

3

program existed that could address appellant's specific issues "because of the nature of the charges and the seriousness of his mental health concerns." (See *post,* at p. 8.) Second, the trial court was "not satisfied that the defendant will not . . . pose an unreasonable risk of danger . . . ." In this regard, the trial court noted the serious, violent nature of the crime and the fact that it occurred without provocation and while appellant was using methamphetamine.

At the same hearing, appellant's trial counsel moved for a continuance, explaining that he needed additional time to prepare for trial and to retain an expert witness regarding appellant's psychiatric condition, methamphetamine use and blackout. Although counsel acknowledged he had been assigned to the case for about two years, he argued that appellant had been restored to competency for only a few months and had only recently rejected a favorable plea offer. Counsel further argued, "the people aren't going to be prejudiced. There is nothing but law enforcement officers as witnesses, and I am not prepared. [¶] It's a serious case. I want to do it right. . . . I could not in a million years have seen the need for any kind of an expert to come in and testify as to effects of an overdose of methamphetamine and blackout."

The trial court denied the continuance, finding no good cause for the delay. It reasoned that counsel had adequate time to retain an expert and prepare for trial because the case had been pending for two years and appellant's substance use was clear from the beginning.

*Contentions*

Appellant contends the trial court abused its discretion when it denied his motions for mental health diversion

and for a continuance of the trial date. He contends there is no substantial evidence he formed the specific intent required to commit attempted murder and that his trial counsel rendered ineffective assistance because counsel failed to request the jury be instructed in terms of CALCRIM No. 3428. Finally, appellant contends the trial court erroneously awarded him only 1214 days of presentence custody credit.

## *Discussion*

### *Mental Health Diversion*

Section 1001.36 provides that a trial court may grant pretrial diversion to a defendant who meets the statute's eligibility and suitability requirements and who is not charged with one of the excluded offenses. (*People v. Frahs* (2020) 9 Cal.5th 618, 627.) A defendant is eligible for diversion if he or she has been diagnosed with a qualifying mental disorder "within the last five years by a qualified mental health expert," and the mental disorder "was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)-(2).) A defendant is suitable for diversion if: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder . . . would respond to mental health treatment. (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . (3) The defendant agrees to comply with treatment . . . . [And] (4) The defendant will not pose an unreasonable risk of danger to public safety as defined in Section 1170.18, if treated in the community." (*Id.*, subd. (c).) Offenses excluded from diversion include murder or voluntary manslaughter, certain sex offenses and possession of a weapon of mass destruction. (*Id.*, subd. (d).) The trial court must also be "satisfied that the recommended inpatient or outpatient program

5

of mental health treatment will meet the specialized mental health treatment needs of the defendant."  (*Id.*, subd. (f)(1)(A)(i).)

"We review the trial court's denial of mental health diversion for abuse of discretion.  [Citation.]  ""[T]he term judicial discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking.'"  [Citation.]  '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.'""  [Citation.]"  (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213 (*Pacheco*).)  "'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.'  [Citation.]"  (*People v. Gerson* (2022) 74 Cal.App.5th 561, 573.)  It is appellant's burden to establish that an abuse of discretion occurred.  (*Pacheco, supra,* at p. 213.)  Ultimately, pretrial mental health diversion "is discretionary, not mandatory, even if all the requirements are met." (*Gerson, supra,* at p. 573.)

Appellant contends the trial court abused its discretion by applying the wrong legal standard when it relied on defense counsel's failure to identify a suitable treatment program and on its assessment of appellant's dangerousness.  There was no abuse.

First, the trial court properly relied on appellant's failure to identify a suitable treatment program. Defense counsel admitted that he could not identify any program that was available, willing and able to address appellant's diverse treatment needs. This alone constitutes substantial evidence supporting the denial.  The trial court cannot "divert" appellant to a non-existent program.

6

*Sarmiento v. Superior Court of San Diego County* (2024) 98 Cal.App.5th 882 (*Sarmiento*), is not to the contrary. There, the court noted that, "Assuming the defendant is both eligible and suitable, the trial court must also be satisfied 'that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health needs of the defendant.' [Citations.] This is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program." (*Id.* at p. 892.) *Sarmiento* further acknowledged that the statute "requires agreement of the proposed treatment entity to accept responsibility for treating the defendant," and that a county mental health agency may submit a declaration informing the trial court if the agency "believes it is unable to provide proper services . . . ." (*Ibid.*, fn. 5.)

*Sarmiento* does not hold that a trial court abuses its discretion if it denies diversion to an eligible defendant based on a finding that a satisfactory treatment program has not been identified. Instead, it holds that a trial court retains jurisdiction to deny diversion even where the defendant meets the eligibility criteria. In addition, a trial court may "reject diversion if it concluded that the proposed treatment services did not target or could not effectively address the defendant's particular diagnosis." (*Sarmiento, supra,* 98 Cal.App.5th at p. 895.)

Second, the trial court here did not abuse its discretion when it found that appellant posed an unreasonable risk to public safety. The statute defines an unreasonable risk to public safety as an unreasonable risk the defendant will commit a

new violent "super strike" felony within the meaning of section 667, subdivision (e)(2)(C)(iv). (§§ 1001.36, subd. (c)(4), 1170.18, subd. (c); *People v. Moine* (2021) 62 Cal.App.5th440, 449-450.) Murder and attempted murder are "'super strikes.'" (*Pacheco, supra,* 75 Cal.App.5th at p. 213.) Here, appellant has no prior convictions for super strike offenses. However, the current offense was exceptionally violent. Appellant attacked a sleeping person, plunging a knife into his abdomen and inflicting a 40-inch wound that required the removal of part of his intestine. Before senselessly assaulting a stranger, appellant had been brandishing his knife in a public park while feigning an assault on his companion. He admits that he had been using methamphetamine at the time. If appellant relapsed during or after community-based treatment, it is reasonable to infer that he would again engage in senseless, unprovoked violence. There was no suitable provider identified to treat appellant. In light of these circumstances, the trial court's dangerousness finding was not arbitrary.

*Continuance*

Appellant contends the trial court abused its discretion and deprived him of due process when it denied his counsel's request for a continuance of the trial date. There was no abuse.

At appellant's preliminary hearing in March 2021, the detective who interrogated him testified that appellant claimed to have blacked out during the crime, due to methamphetamine use. Thus, appellant's trial counsel knew, when he was assigned to the case in July 2021, that voluntary intoxication would be relevant to the defense. Appellant was declared not mentally competent in September 2021. He

8

remained committed for treatment until April 2023, when the trial court found that he had been restored to competency. Appellant's trial counsel, then, had over two years to prepare for trial and to retain an expert.

The trial court denied counsel's request for a continuance because it found the failure to retain an expert during that two-year period was not due diligence and did not establish good cause. Additionally, the trial court noted that, after appellant returned from treatment, he refused to waive time for trial, requiring the trial court to set the matter for trial two weeks later. As a consequence, the prosecution had already subpoenaed its witnesses.

"A trial court's exercise of its broad discretion when ruling on a continuance motion is accorded substantial deference on appeal." (*People v. Brown* (2023) 14 Cal.5th 530, 538.) "A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence. [Citations.] When a continuance is sought to secure the attendance of a witness, the defendant must establish 'he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' [Citation.] The court considers "'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion."'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) The trial court's discretion "may not be

9

exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.)

As the trial court noted, appellant's counsel had notice for two years that appellant claimed to have blacked out during the crime, due to methamphetamine use. Despite the lengthy delay, counsel did not retain an expert witness or provide the trial court with any reason to believe an expert could be retained and prepared to testify within a reasonable time. In addition, appellant had been unwilling to waive his speedy trial rights for that purpose. Given these facts, the trial court did not abuse its discretion when it concluded appellant's counsel had not demonstrated good cause for a continuance.

*Substantial Evidence of Specific Intent*

Appellant contends his conviction of attempted murder must be reversed because there is no substantial evidence his formed the required specific intent to kill. Instead, his voluntary intoxication and mental illness caused his "bizarre behavior" and caused him to lack "awareness of the consequences of lunging at people with a knife." We are not persuaded.

"On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) It is the exclusive province of the trier to fact to determine the credibility of witnesses or the truth or falsity of the relevant facts. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).)

10

A conviction of attempted murder requires proof beyond a reasonable doubt that appellant had the specific intent to kill and committed a direct but ineffectual act toward accomplishing an intended killing. (*Smith, supra,* 37 Cal.4th at p. 734.) An intent to kill may be inferred from the defendant's conduct and from the other circumstances of the crime. (*Id.* at p. 741.) Evidence of a defendant's voluntary intoxication may be relevant to "the question whether the defendant *actually* had the requisite specific mental state required for commission of the crimes at issue." (*People v. Horton* (1995) 11 Cal.4th 1068, 1119; see also *People v. Mendoza* (1998) 18 Cal.4th 1114, 1126, fn. 3; § 29.4, subd. (b).)

Appellant admits that he was heavily intoxicated on methamphetamine at the time of the offense. He was laughing and running in circles in a public park, while swinging a knife and wrestling with a friend. When he encountered the victim, who was asleep on the grass, appellant knelt down and plunged the knife into the victim's abdomen, inflicting a large wound and damaging the victim's intestine. Appellant later told police that he had blacked out during the crime and did not remember it. The utterly senseless, unprovoked nature of the crime could support an inference that appellant lacked awareness of the consequences of his actions.

There is also, however, substantial evidence supporting an inference that appellant harbored the specific intent to kill the victim. Appellant was conscious enough to choose his victim. He did not, for example, stab his friend even though they were running in circles and laughing together while he swung the knife around. He was also able to respond coherently – and sarcastically – to the public safety officer who

11

asked him to drop the knife. Appellant acted rationally, demonstrating a consciousness of guilt, after the stabbing. When he saw uniformed police officers approaching him, appellant ran away and tried to avoid arrest. He was nevertheless arrested almost immediately and, very shortly thereafter, was capable of having a cogent conversation with the interrogating detective. During the interrogation, appellant had the presence of mind to give the detective a false name, lie about possessing a knife and claim to have no memory of the stabbing.

A rational trier of fact could rely on this evidence to find appellant was not unconscious as a result of voluntary intoxication when he committed the stabbing. Additionally, appellant chose a helpless, sleeping victim to attack and stabbed him in a part of the body that could easily have caused death. This is substantial evidence on which the jury could reasonably rely to find appellant formed the specific intent to stab the victim.

*Ineffective Assistance of Counsel*

Appellant contends his trial counsel was ineffective because he did not request the jury be instructed with CALCRIM No. 3428, on mental disease as a defense.[2] "An ineffective

---

[2] The instruction provides, "You have heard evidence that the defendant may have suffered from a mental [disease]. You may consider this evidence only for the limited purpose of deciding whether, at the time of the charged crime, the defendant acted [or failed to act] with the intent or mental state required for that crime. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant acted [or failed to act] with the required intent or mental state, specifically [specific intent or mental state required]. If the People have not met this burden, you must find the defendant not guilty of [the alleged offense]." (CALCRIM No. 3428.)

12

assistance of counsel claim has two elements: a defendant must show that their counsel's performance was deficient, *and* that this deficient performance prejudiced the defense. [Citation.]" (*In re Tellez* (2024) 17 Cal.5th 77, 88.) To show deficient performance, the defendant must show counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Prejudice in this context means, "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Ibid.*)

"[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.) The duty of defense counsel "'includes careful preparation of and request for all instructions which in his judgment are necessary to explain all of the legal theories upon which his defense rests.'" (*People v. Hussain* (2014) 231 Cal.App.4th 261, 270, quoting *People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 164-178.) At least one court has held that, "there can be no satisfactory reason not to request an instruction to support the core of the defense." (*Hussain, supra,* at p. 271.)

Appellant contends counsel's failure to request that the jury be instructed in terms of CALCRIM No. 3428 was deficient performance and prejudicial because the theory of the defense was that his mental illness prevented him from forming the specific intent to kill. CALCRIM No. 3428 is a pinpoint instruction that must be given only if supported by substantial

evidence that the defendant's mental illness affected his or her formation of the relevant intent. (*People v. Ervin* (2000) 22 Cal.4th 48, 91.) The presence of a mental illness or disease "'is a *medical* diagnosis. . . .' [Citation.] Expert medical testimony is necessary to establish a defendant suffered from a mental disease, mental defect, or mental disorder because jurors cannot make such a determination from common experience." (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1116-1117.) In the absence of medical testimony, there is no evidentiary basis for the instruction. (*Ibid.*)

Here, there was no evidence supporting CALCRIM No. 3428 because the jury heard no expert opinion that appellant suffers from a mental disease, disorder or defect. Trial counsel was not ineffective for failing to request an instruction that was not supported by the evidence.

Moreover, appellant has not shown he was prejudiced by the failure to instruct in terms of CALCRIM No. 3428 because mental illness was not a cornerstone of the defense. Appellant's defense centered on his drug use, not his mental illness. The jury was instructed, in terms of CALCRIM No. 3426, that it could consider appellant's voluntary intoxication in deciding whether he actually had the specific intent to kill the victim. It heard testimony from and saw police officers' body camera video documenting appellant's behavior before and after the stabbing. The jury also heard the statements appellant made during his interrogation, including his claim that he had "blacked out" due to methamphetamine use. Based on this evidence, the jury could have found that appellant was too intoxicated to harbor the required mental state. Instead, the jury found that appellant formed the specific intent to kill despite his intoxication. It is not

reasonably probable the jury would have reached a different conclusion had it also been instructed that, even in the absence of expert medical testimony, it could consider mental illness for the same purpose.

## *Custody Credits*

Appellant contends the trial court incorrectly calculated his presentence custody credits, awarding him 1214 days' credit when he is entitled to credit for 1250 days. Respondent correctly concedes the error.

Appellant was arrested on August 6, 2020. He was sentenced on July 28, 2023. Consequently, he was entitled to 1087 days of actual presentence custody credit. (*People v. Adams* (2018) 28 Cal.App.5th 170, 180 [presentence custody credits include day of arrest and day of sentencing].) In addition, appellant is entitled to conduct credit for 15 percent of his actual days in custody or 163 days. (§ 2933.1, subd. (a); *People v. Ramos* (1996) 50 Cal.App.4th 810, 816-817.) In total then, appellant is entitled to credit for 1250 days, rather than the 1214 days awarded. We will direct that the judgment be to award the correct custody credits.

## *Disposition*

The judgment is modified to award appellant 1087 days of presentence custody credit and 163 days of conduct credit for a total of 1250 days. The superior court clerk is directed to prepare and forward to the Department of Corrections and Rehabilitation a modified abstract of judgment reflecting these custody credit awards. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

William L. Sadler, Judge

Superior Court County of Los Angeles

_____

Bases & Bases and Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.